IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., as Trustee for the Certificateholders of Commercial Mortgage Pass-Through Certificates, Series 2006-MF2 and 2006-MF3, acting by and through Crown Northcorp, Inc., as Special Servicer, | ) ) ) ) ) ) | Case No. 11 C 166 |
| Plaintiff, | ) ) | Judge Virginia M. Kendall |
| v. | ) ) | |
| LaSALLE BANK NATIONAL ASSOCIATION, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo"), as Trustee for the certificateholders of certain mortgage-backed securities, brought suit against Defendant LaSalle Bank National Association ("LaSalle"), for breaching warranties associated with the sale of eight loans. Wells Fargo seeks compensatory damages and specific performance. Each count of the eight-count Complaint alleges various breaches of warranty associated with a particular loan. LaSalle moves to dismiss in entirety Counts 1, 2, 5, 7, and 8, and to dismiss in part Counts 3, 4, and 6 for failing to state a proper claim under Rule 12(b)(6). In the alternative, LaSalle moves under Rule 12(e) for the Court to order Wells Fargo to "make a more definite statement" of its claims. For the following reasons, the Court grants in part and denies in part LaSalle's Motion to Dismiss. The Court also denies LaSalle's Motion for Wells Fargo to provide a more definite statement.

## BACKGROUND

At this initial stage, the Court takes the allegations asserted in the Complaint as true. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995).

# I. Securitization

LaSalle was the originator for eight commercial real estate loans. (Compl. ¶ 5.) LaSalle provided funding to owners of multi-family residential buildings, and a note signed by each borrower and payable to LaSalle accompanied each transaction. (*Id.* ¶¶ 21, 29, 38, 52, 60, 66, 74, 82.) The notes were each secured by a multifamily mortgage, assignment of rent, and a security agreement. (*Id.* ¶¶ 22, 30, 39, 53, 61, 67, 75, 83.)

LaSalle Commercial Mortgage Securities, Inc. ("LaSalle Commercial"), an entity affiliated with LaSalle, bought these loans from LaSalle under the Mortgage Loan Purchase Agreement ("MLPA"). (*Id.* ¶ 5.) The MLPA provided LaSalle Commercial with numerous warranties covering the quality of the loans. (*Id.* ¶ 6.) LaSalle Commercial then pooled these loans into a security interest and, as part of the securitization, moved the loans into two trusts, the MF2 and MF3. (*Id.* ¶¶ 1, 2.). Both the MF2 and MF3 trusts consisted of more than $400 million in commercial real estate mortgage loans. The legally operative document that created the MF2 and MF3 trusts was the Pooling and Servicing Agreement ("PSA") between LaSalle Commercial and Wells Fargo. (*Id.* ¶¶ 1-3.) Through the PSA LaSalle Commercial sold Wells Fargo its interests in the loans and also assigned to Wells Fargo its warranties covering the eight loans; that is, via the PSA LaSalle Commercial passed along some, but not all, of its rights under the MLPA to Wells Fargo. (*Id.* ¶ 5.)

The MF2 trust was created as a result of two transactions. (*Id.* ¶ 8.) LaSalle Commercial bought the loans from LaSalle through the MF2 MLPA, and as part of the securitization process LaSalle Commercial then sold the loans to Wells Fargo pursuant to the MF2 PSA, both of which were dated March 30, 2006. (*Id.*) The arrangement was the same for the MF3 trust but occurred on a different date, June 29, 2006: the MF3 MLPA governed the sale from LaSalle to LaSalle

Commercial and the MF3 PSA controlled LaSalle Commercial's sale later that same day to Wells Fargo.[1] Out of the eight loans at issue, two comprised the MF2 trust and the other six were included in the MF3 trust.  (*Id.* ¶¶ 8, 9.)

The MF2 and MF3 trusts are considered to be a Real Estate Mortgage Investment Conduit ("REMIC") under the Internal Revenue Code.  (*Id.* ¶ 3.)  A REMIC trust is a pool of mortgages that sells ownership interests to investors, who receive certificates representing their fractional interest.  (*Id.*)  These certificateholders depend on loan originators, sellers, and servicers to make accurate representations and warranties as to the character of the loans that comprise the total mortgage pool.  (*Id.* ¶ 4.)

The eight loans were packaged into the pool of mortgages despite being defective under numerous warranty clauses.  (*Id.* ¶ 10.)  The securitization and transfer of these loans to Wells Fargo via the PSA resulted in a devaluation of the mortgaged property and the value of the loans, which harmed the certificateholders.  (*Id.* ¶¶ 27, 36, 50, 58, 64, 72, 80, 93.)  As a result, Wells Fargo seeks to invoke PSA § 2.03(b) and MLPA § 6(e), which require LaSalle to repurchase the loans.

## II.    Warranties

Under the MLPA, as the seller of the mortgage loans, LaSalle made representations and warranties as to certain qualities of the loans.  (*Id.* ¶ 19.)  These are the relevant provisions[2]:

- **MLPA Section 6(a)(viii) – Misrepresentations:** "[At the Closing Date, the Seller] has no actual knowledge that any statement, report, officer's certificate or other

---

[1]  The relevant provisions of the PSAs for the MF2 and MF3 are identical and therefore the Court's reference to PSA applies equally to both.  The MLPAs are the same for MF2 and MF3, so MLPA will also refer to both.  Likewise, the "Closing Date" for the Goodman and Cress Loans is March 30, 2006, and for the Glavin, Gutierrez, Chowdhury, 5GX, Hunter, and Windwood Loans is June 29, 2006.  (*Id.* ¶¶ 8, 9.)

[2]  The short caption for each provision or warranty is not part of the MLPA (i.e., "Misrepresentations").  The Court created them to help differentiate the various provisions and warranties at issue.

document prepared and furnished or to be furnished by the Seller in connection with the transactions contemplated hereby (including, without limitation, any financial cash flow models and underwriting file abstracts furnished by the Seller) contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained therein, in the light of the circumstances under with they were made, not misleading."

- **MLPA Section 6(d) – Notice of Breach/Defect:** "[T]he Seller and the Purchaser shall be given notice of any Breach or Defect that materially and adversely affects the value of a Mortgage Loan, the value of the related Mortgaged Property or any interest of any Certificateholder in the Mortgage Loan or the related Mortgaged Property."

- **MLPA Section 6(g) – Notice of Warranty Breach:** "Each party hereby agrees to promptly notify the other party of any Breach of a representation or warranty contained in this Section 6."

- **Warranty 6 – Mortgaged Property Unencumbered:** "[At the Closing Date] [n]o Mortgaged Property secures any mortgage loan not represented on the Mortgage Loan Schedule; no Mortgage Loan is cross-collateralized or cross-defaulted with any other mortgage loan other than one or more Mortgage Loans as shown on the Mortgage Loan Schedule; no Mortgage Loan is secured by property which secures another mortgage loan other than one or more Mortgage Loans as shown on the Mortgage Loan Schedule."

- **Warranty 10(a) – Enforceable:** "The Mortgage Loan documents for each Mortgage Loan contain enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the practical realization against the Mortgaged Property of the principal benefits of the security intended to be provided thereby, including realization by judicial or non-judicial foreclosure . . . ."

- **Warranty 10(b) – Enforceable:** "[S]uch Mortgage Loan documents taken as a whole are enforceable to the extent necessary and customary for the practical realization of the principal rights and benefits afforded thereby."

- **Warranty 13 – No Material Default, Breach:** "[At the Closing Date] [t]here exists no material default, breach, violation or event of acceleration . . . under the documents evidencing or securing the Mortgage Loan, in any such case to the extent the same materially and adversely affects the value of the Mortgage Loan and the related Mortgage Property . . . ."

- **Warranty 16 – Restrictive Covenants/Zoning:** "To the Seller's knowledge . . . as of the date of origination of the Mortgage Loan, based on inquiry customary in the industry, the related Mortgaged Property was, and to the Seller's actual knowledge

. . . as of the Closing Date, the related Mortgaged Property is, in all material respects, in compliance with, and is used and occupied in accordance with, all restrictive covenants of record . . . and applicable zoning laws and all inspections, licenses, permits and certificates of occupancy required by law, ordinance or regulations to be made or issued . . . have been obtained and are in full force and effect, except to the extent the failure to obtain or maintain such inspections, licenses, permits or certificates of occupancy does not materially impair or materially and adversely affect the use and/or operations of the Mortgaged Property . . . ."

- **Warranty 18 – Material Improvements:** "To the Seller's knowledge based on surveys or the Title Insurance Policy, (i) none of the material improvements that were included for the purpose of determining the appraised value of the related Mortgaged Property at the time of the origination of such Mortgage Loan lies outside the boundaries and building restriction lines of such Mortgaged Property, or encroach over any easements, except to the extent they are legally nonconforming . . . ."

- **Warranty 19(a) – Good Repair:** "[T]o Seller's knowledge as of the Closing Date, the related Mortgaged Property is either in good repair, free and clear of any damage that would materially adversely affect the value . . . or the use and operation of the Mortgaged Property as it was being used or operated as of the origination date. Since the origination date, to the Seller's knowledge, such Mortgaged Property has not been damaged by . . . physical condition . . .which damage has not been fully repaired or fully insured, or for which escrows in an amount consistent with the standard utilized by the Seller with respect to loans it holds for its own account have not been established."

- **Warranty 23 – Industry Standards:** "The origination, servicing and collection practices used by the Seller . . . with respect to such Mortgage Loan have been in all material respects legal and have met customary industry standards."

- **Warranty 35 – Appraisal:** "An appraisal of the related Mortgaged Property was conducted in connection with the origination of such Mortgage Loan, and such appraisal satisfied the guidelines in Title XI of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ['FIRREA'], as in effect on the date such Mortgage Loan was originated."

## III.    Warranty Breaches

Each of the eight loans at issue is a separate count and within each count Wells Fargo alleges

that LaSalle breached multiple warranties. The Complaint covers loans to the following borrowers:

Count I – Kathryn Goodman ("Goodman Loan"); Count II – Adam Cress ("Cress Loan"); Count III

– Harry and Elise Glavin ("Glavin Loan"); Count IV – Victor, Vanessa, and Guillermo Gutierrez ("Gutierrez Loan"); Count V – Chowdhury Place II, LLC ("Chowdhury Loan"); Count VI – 5GX, LLC ("5GX Loan"); Count VII – Bret Hunter ("Hunter Loan"); and Count VIII – Windwood Apartments SG, LLC ("Windwood Loan").

While most of the eight loans breached different combinations of the applicable warranties, the two warranties common to all the claims are Warranty 23 (Industry Standards) and Warranty 35 (Appraisal). Wells Fargo pleads both of these breach of warranty allegations in an identical manner for all of the loans, so the Court will summarize these allegations at the outset to avoid needless repetition. For all eight of the loans, Wells Fargo alleges that LaSalle breached Warranty 23 (Industry Standards) as a result of "origination, servicing, and collection practices" that did not "meet customary industry standards." (*Id.* ¶¶ 25, 34, 48, 56, 62, 70, 78, 91.) Similarly, for the claim that LaSalle breached Warranty 35 (Appraisal), Wells Fargo alleges that the appraisal reports for each of the mortgaged properties were not ordered in accordance with FIRREA procedures, contained material errors, and, in general, did not conform to FIRREA; these defects collectively resulted in a "misleading opinion of value." (*Id.* ¶¶ 26, 35, 49, 57, 63, 71, 79, 92.)

Wells Fargo also alleges, for all of the counts, that LaSalle breached its obligations under the PSA Section 2.03(b) and MLPA Section 6(e) for failing to repurchase the loans within ninety days of receiving notice of the alleged warranty breaches. (*Id.* ¶¶ 98, 104, 110, 116, 122, 128, 134, 140.)

## A. Goodman Loan

LaSalle loaned Kathryn Goodman $2,500,000 and the mortgaged property is a 56-unit apartment complex in Clearwater, Florida. (*Id.* ¶¶ 20, 21.) Wells Fargo alleges that the Goodman Loan violated four provisions or warranties under the MLPA.

First, Wells Fargo claims that LaSalle breached MLPA Section 6(a)(viii) because the Loan Underwriting Submission, dated November 28, 2005, "contains misrepresentations and omissions." (*Id.* ¶ 23.) Second, LaSalle breached Warranty 6 (Mortgage Property Unencumbered) because on the Closing Date for the Goodman Loan, the mortgaged property was "encumbered by a second lien." (*Id.* ¶ 24.) Wells Fargo also alleged breach of Warranties 23 (Industry Standards) and 35 (Appraisal). (*Id.* ¶ 25, 26.)

## B. Cress Loan

LaSalle loaned Adam Cress $2,630,000 and obtained as collateral a 48-unit apartment complex located in Blaine, Minnesota. (*Id.* ¶¶ 28, 29.) LaSalle breached five warranties with respect to this loan: (1) Warranty 13 (No Material Default/Breach) because the borrower had failed to make necessary repairs as required by the City of Blaine and therefore the loan was in default; (2) Warranty 16 (Restrictive Covenants/Zoning) because the repairs were not finished and on the Closing Date the mortgaged property did not have a valid Rental License; (3) Warranty 19(a) (Good Repair) since the mortgaged property was not in "good repair"; (4) Warranty 23 (Industry Standards); and Warranty 35 (Appraisal). (*Id.* ¶¶ 31-35.)

## C. Glavin Loan

Harry and Elise (now deceased) Glavin borrowed $1,252,000 from LaSalle. (*Id.* ¶ 37.) The mortgaged property included ten two-story residential buildings that contained a total of 58 rental units in Garland, Texas. (*Id.* ¶ 38.) The City of Garland inspected the property in 2006 and 2007, found numerous code violations, and required the borrowers to make certain repairs to the property. (*Id.* ¶ 42.) Thus, there was a Repair Agreement in this loan, which set aside $93,750 in escrow to fund these repairs. (*Id.* ¶ 41.) These repairs, however, were never made, and LaSalle did not

undertake efforts to ensure their successful completion. (*Id.*) On August 28, 2007, the City of Garland closed the mortgaged property because of these defects. (*Id.*)

LaSalle breached five warranty provisions related to the Glavin Loan. Wells Fargo alleges a breach of Warranty 13 (No Material Default, Breach) because the loan was in default on the Closing Date as a result of the borrowers not implementing repairs correcting its code violations. (*Id.* ¶ 43.) Similarly, LaSalle was aware of these defects in the property but "failed to inquire" whether the borrowers had taken action to fix them, in breach of Warranty 16 (Restrictive Covenant/Zoning). (*Id.* ¶ 44.) Along similar lines, LaSalle's knowledge that the property was in disrepair, along with the release of escrow funds without assurance that the required repairs were complete, constituted a breach of Warranty 19(a) (Good Repair). (*Id.* ¶¶ 46, 47.) Finally, LaSalle breached Warranty 23 (Industry Standards) and Warranty 35 (Appraisal). (*Id.* ¶¶ 48, 49.)

### D.     Gutierrez Loan

LaSalle loaned Victor, Vanessa, and Guillermo Gutierrez $1,720,000. (*Id.* ¶ 52.) The mortgaged property was an 86-unit apartment in Tulsa, Oklahoma. (*Id.* ¶ 51.) Wells Fargo alleges that LaSalle breached Warranty 10(a) and (b) (Enforceable). Specifically, Warranty 10(a) requires that the mortgages contain provisions protecting "the practical realization against the Mortgaged Property of the principal benefits of the security intended to be provided thereby, including realization by judicial or non-judicial foreclosure . . . ." Because this loan did not contain sufficient "power-of-sale" language to allow for a non-judicial foreclosure, it breached this warranty. (*Id.* ¶ 54.) LaSalle also breached Warranty 13 (No Material Default, Breach) because the Gutierrez Loan was in default at the closing date because, contrary to the language in the mortgage, the borrowers transferred ownership of the mortgaged property to 3V Apartments, LLC by quit claim deed. (*Id.*

¶ 55.) Finally, LaSalle breached Warranty 23 (Industry Standards) and Warranty 35 (Appraisal). (*Id.* ¶¶ 56, 57.)

### E. Chowdhury Loan

Chowdhury Place II, LLC was the borrower on the $424,000 Chowdhury Loan. (*Id.* ¶¶ 59, 60.) The mortgaged property was a three-story building with ten residential units in Hartford, Connecticut. (*Id.* ¶ 59.) LaSalle breached Warranties 23 (Industry Standards) and 35 (Appraisal). (*Id.* ¶¶62, 63.)

### F. 5GX Loan

5GX, LLC is the borrower on the 5GX Loan in the amount of $1,200,000 and the mortgaged property is a one-story 48-unit apartment complex in Geneva, Ohio. (*Id.* ¶¶ 65, 66.) LaSalle breached Warranty 6 (Mortgaged Property Unencumbered) because, on the Closing Date, the mortgaged property was encumbered by two liens executed on February 21, 2006 in the amount of $150,000 each. (*Id.* ¶ 68.) Moreover, LaSalle breached Warranty 13 (No Material Default, Breach) because the loan was in default on the Closing Date. (*Id.* ¶ 69.) A provision of the 5GX Mortgage states that "Without Lendor's prior written permission, Borrower shall not allow any lien inferior to this Instrument to be perfected against the Property." (*Id.*) On the Closing Date the 5GX Loan was in default because 5GX had two additional liens to be perfected against the mortgaged property without LaSalle's written permission. (*Id.*) LaSalle also breached Warranties 23 (Industry Standards) and 35 (Appraisal). (*Id.* ¶¶ 70, 71.)

### G. Hunter Loan

Bret Hunter is the borrower on the Hunter Loan of $480,000. (*Id.* ¶¶ 73, 74.) The mortgaged property is a 28-unit multifamily complex in Muskogee, Oklahoma. (*Id.* ¶ 73.) Because this loan

did not contain sufficient "power-of-sale" language to allow for a non-judicial foreclosure, it breached Warranty 10(a) and (b). (*Id.* ¶ 76.) LaSalle breached Warranty 18 (Material Improvements) "because exceptions to the LandAmerica Lawyers Title Policy dated May 12, 2006 include various encroachments of fencing [and] parking." (*Id.* ¶ 77.) A provision in the policy also states "Encroachment of two 2-story apartment buildings into 25 foot setback line affecting Lots 9 and 10 . . . ." (*Id.*) LaSalle breached Warranties 23 (Industry Standards) and 35 (Appraisal) as well. (*Id.* ¶¶ 78, 79.)

### H.    Windwood Loan

Windwood Apartments SG, LLC ("Windwood Borrower") was the borrower for the Windwood Loan. (*Id.* ¶ 81.) Kevin J. Flessner ("Flessner") is the owner of Windwood Apartments and guarantor of the Windwood Loan. (*Id.*) The mortgaged property is the Windwood Apartments, which is an 80-unit multifamily complex in Pickens, South Carolina. (*Id.*) After approving the Windwood Loan, LaSalle funded the loan in the amount of $1,745,000. (*Id.* ¶ 82.)

In addition to owning Windwood Borrower, Flessner also owned Windwood Apartments d/b/a HR, Inc. ("Windwood Seller"). (*Id.* ¶ 84.) On December 30, 2005, Windwood Gardens LP, John Cobb, and Arlan Hawkins sold the mortgaged property to Windwood Seller for $1,520,000; immediately afterwards Windwood Seller then sold the mortgaged property to Windwood Borrower for $2,240,000. (*Id.* ¶ 85.) LaSalle provided the financing for the $2,240,000 transaction. (*Id.*) This was a sham transaction intended to generate higher profits for the Windwood Borrower and by underwriting the Windwood Loan, LaSalle either aided the scam or was negligent in not discovering that fraud was afoot. (*Id.* ¶¶ 86, 87.)

As a result, Wells Fargo alleges that LaSalle breached five loan provisions. First, LaSalle breached MLPA Section 6(a)(viii) because LaSalle's May 2, 2006 Loan Underwriting Submission, and a later Asset Summary Report prepared for the sale and securitization of the Windwood Loan, contained material misrepresentations. (*Id.* ¶ 88.) Second, LaSalle breached MLPA Sections 6(d) and (g) because it was aware of the Windwood Borrower fraud in 2006, yet did not notify Wells Fargo. (*Id.* ¶ 89.) Third, LaSalle breached Warranty 13 because the Windwood Loan was in default on the Closing Date because misleading and incorrect information had been submitted during the loan application process. (*Id.* ¶ 90.) LaSalle also breached Warranties 23 (Industry Standards) and 35 (Appraisal). (*Id.* ¶¶ 91, 92.)

## STANDARD OF REVIEW

To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

To withstand a Rule 12(b)(6) challenge, the complaint must overcome two obstacles. First, it must provide the defendant "fair notice" as to the character of the claim and the facts supporting the claim. *Twombly*, 550 U.S. at 555. In showing the grounds supporting relief, the plaintiff must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Second, when there are well-pleaded factual allegations, the Court assumes

their veracity, construes them in the light most favorable to the plaintiff, and then determines if they plausibly give rise to an entitlement to relief. *Id.*; *see Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011). At this early stage, the Court only tests the adequacy of the complaint, and does not evaluate the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1521 (7th Cir. 1990).

## DISCUSSION

### I.     Failure to State a Claim Under Rule 12(b)(6)

The Complaint alleges that LaSalle breached multiple warranties for each of the eight loans that were bundled into a security interest and sold to Wells Fargo.[3] Before evaluating the sufficiency of the Complaint as to each count the Court will address Warranties 23 (Industry Standards) and 35 (Appraisal), which are alleged in identical fashion for all of the counts.

Documents attached to the motion to dismiss that are specifically referenced in the Complaint and "central" to the claims at issue do not convert a motion to dismiss into a motion for summary judgment. *McCready v. eBay,* Inc., 453 F.3d 882, 891 (7th Cir. 2006); *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). Here, the MLPA and PSA were attached to LaSalle's Motion to Dismiss and both go directly to the heart of the allegations of this lawsuit. The Court therefore can move outside the four corners of the Complaint and consult these documents.

In Warranty 23 of the MLPA, LaSalle assured LaSalle Commercial, and later Wells Fargo, that its "origination, servicing and collection practices" sufficiently "met customary industry standards." The allegations for each of the eight counts, however, contain little more than simply

---

[3] Under the terms of the PSA, the Court will apply New York substantive law to the dispute. (R. 62, PSA Agreement Section 11.04, at 193.)

a recitation of this operative language: Wells Fargo states generally, without any elaboration, that LaSalle's origination, servicing and collection practices violated industry standards. As pled, LaSalle is not put on notice about what conduct deviated from industry standards, nor are there enough facts to establish a plausible basis for relief. The Court therefore dismisses without prejudice the Warranty 23 claims made in Counts 1, 2, 3, 4, 5, 6, 7, and 8.

Warranty 35 is deficient for similar reasons. Under Warranty 35, LaSalle guaranteed that an appraisal of the mortgaged property was performed in conformance with the requirements of the Financial Institutions Reform, Recovery and Enforcement Act of 1989. The allegations for each of the eight counts state that the appraisal reports for the various mortgage properties were ordered incorrectly, contained errors, and "did not conform to FIRREA." Such allegations do not illuminate for LaSalle how it breached this warranty. Specifically, Wells Fargo does not identify the character of the errors in the report or the reasons why the appraisals violated FIRREA. Without these basic facts, the allegations fall short of satisfying the notice and plausibility requirements. Accordingly, the Court dismisses without prejudice the Warranty 35 claims made in Counts 1, 2, 3, 4, 5, 6, 7, and 8.

LaSalle also makes the argument that, for every count, Wells Fargo inadequately pleads facts showing that a "material and adverse" effect resulted from the warranty breaches. The Complaint alleges that the warranty breaches deflated the value of the mortgaged property and the loan, harming the certificateholders' interests. The warranty breaches of the loans comprising the MF2 and MF3 trusts had the direct result of lowering the value of the individual loans and injuring the certificateholders. Wells Fargo need not produce itemized damages at this point. It is sufficient that Wells Fargo identifies the source and general nature of the damages.

### A.     Count I - Goodman Loan

With respect to the Goodman Loan, Wells Fargo alleges breach of MLPA Section 6(a)(viii) (Misrepresentations); Warranty 6 (Mortgaged Property Unencumbered); Warranty 23 (Industry Standards); and Warranty 35 (Appraisal).  LaSalle moves to dismiss them all.

#### 1.     MLPA Section 6(a)(viii)

LaSalle challenges this claim on two alternative theories.  First, it maintains that Wells Fargo, as Trustee, is not a party to the MLPA, and the PSA expressly excludes Section 6(a)(viii) from the bundle of rights that LaSalle Commercial transferred to Wells Fargo.  Second, even assuming that Wells Fargo has standing to allege a violation of Section 6(a)(viii), LaSalle contends that the factual allegations pled are inadequate under *Iqbal* and *Twombly*.

If the relevant contractual provisions are unambiguous and clear, interpretation of the provisions is a question of law, not fact, and as such can be addressed by the Court on a motion to dismiss.  *See, e.g., De Lage Landen Fin. Serv., Inc. v. M.D.M. Leasing Corp.*, No. 07 C 0045, 2007 WL 4355037, at *2 (N.D. Ill. Dec. 10, 2007) (Aspen, J.); *Robinson v. Midlane Club, Inc.*, No. 94 C 1459, 1995 WL 453057, at *9 n. 4 (N. D. Ill. July 28, 1995) (Marovich, J.) (contract claim could be addressed on motion to dismiss if "unambiguous terms of the contract" barred plaintiff from obtaining relief).

The MLPA was the agreement that governed LaSalle's sale of the loans to its affiliated entity, LaSalle Commercial.  Wells Fargo was not a party to the MLPA and it does not argue otherwise.  It was only through the subsequent PSA that LaSalle Commercial transferred its rights in the MLPA to Wells Fargo, which was a separate transaction.  But under the plain terms of the PSA, LaSalle Commercial did not transfer all of its rights to Wells Fargo.  A specific provision of the

PSA—Section 2.01(a), titled "Conveyance of Mortgage Loans—excluded MLPA Section 6(a)(viii) from the set of rights that Wells Fargo was able to enforce. PSA Section 2.01(a) transferred LaSalle Commercial's rights, titles, and interests to Wells Fargo "*(excluding clause (viii) of Section 6(a))*." (R. 39, Ex. A at 55.) (emphasis added).

As a matter of law, the unambiguous terms of the MLPA and PSA bar Wells Fargo from asserting a claim under MLPA Section 6(a)(viii). The argument that this claim also fails under *Iqbal* and *Twombly* is moot. The Court grants LaSalle's Motion to Dismiss the MLPA Section 6(a)(viii) claim with prejudice.

### 2.    Warranty 6

Wells Fargo alleges breach of Warranty 6 (Mortgaged Property Unencumbered) because, at the time of closing, a second lien encumbered the mortgaged property. (Compl. ¶ 24.) LaSalle was aware of this second lien because it was listed in LaSalle's Loan Underwriting Submission dated November 28, 2005. (*Id.*) LaSalle contends that these allegations fail to plead all of the required elements for this claim because Warranty 6 assures that there will be no other "mortgage loans" secured by the mortgaged property. Not all liens are related to mortgage loans, LaSalle maintains, so only alleging the presence of a second "lien" is too speculative to satisfy *Iqbal* and *Twombly*.

The Complaint puts Wells Fargo on notice and states a plausible claim. The allegation identifies a particular document that LaSalle created—the November 28, 2005 Loan Underwriting Submission—as support for the assertion that another lien encumbered the mortgaged property. Review of this document would reveal the exact character of the lien, namely, whether it is related to mortgage loans. Based on discovery, LaSalle can later challenge the legal sufficiency of this claim on this basis. But at this early stage, Wells Fargo has pointed to the specific document showing that

another lien encumbers the mortgaged property, and there is a plausible chance that if this is related to a mortgage loan, Wells Fargo would be entitled to relief. The Court denies LaSalle's Motion to Dismiss Warranty 6.

### 3. Warranties 23 and 35

As discussed, Warranties 23 and 35 are factually insufficient to properly state a claim upon which relief can be granted and therefore the Court dismisses them without prejudice.

### 4. Order

The Court grants the Motion to Dismiss the MLPA Section 6(a)(viii) claim with prejudice, grants the Motion to Dismiss Warranties 23 and 35 without prejudice, and denies the Motion to Dismiss Warranty 6.

## B. Count II – Cress Loan

LaSalle moves to dismiss Count II in entirety because the following five alleged warranty breaches for the Cress Loan are insufficiently pled: (1) Warranty 13 (No Material Default, Breach); (2) Warranty 16 (Restrictive Covenants/Zoning); (3) Warranty 19(a) (Good Repair); (4) Warranty 23 (Industry Standards); and (5) Warranty 35 (Appraisal).

### 1. Warranties 13, 16, 19(a)

The breach of warranty allegations for these three warranties turn on the same set of allegations: that the borrower failed to make certain required repairs to the mortgaged property at the time of the Closing Date, so the property was in disrepair. LaSalle breached Warranty 13 (No Material Default, Breach) because the borrower never made repairs required by the City of Blaine, resulting in the Cress Loan being in default. (Compl. ¶ 31.) Likewise, by neglecting its obligation to make the required repairs, coupled with the fact that the mortgaged property did not have a valid

Rental License at the Closing Date, the mortgaged property did not comply with "all restrictive covenants of record . . . and applicable zoning laws and all inspections, licenses, permits and certificates of occupancy required by law," in violation of Warranty 16 (Restrictive Covenants/Zoning). (*Id.* ¶ 32.) Finally, LaSalle breached Warranty 19(a) because the mortgaged property was not in good repair on the Closing Date. (*Id.* ¶ 33.)

LaSalle attacks these three breach of warranty claims for lacking detail about what specific repairs the borrowers failed to address and whether LaSalle had knowledge that the borrowers never completed the repairs. Wells Fargo does not simply plead in a conclusory way that "repairs" were needed, but identifies the kind of specifics that adequately put LaSalle on notice: the City of Blaine required certain repairs, which the borrowers did not complete, and on the Closing Date the borrowers did not have a legitimate Rental License. It is not necessary for Wells Fargo to pinpoint exactly the type of repairs that the borrowers failed to fix; it is enough that the mortgaged property fell short of city regulations and as a result breached Warranties 13, 16, and 19(a). Finally, Wells Fargo sufficiently pleads "knowledge" as Rule 8(b) allows "[m]alice, intent, knowledge, and other conditions of a person's mind" to be pled "generally." Fed. R. Civ. P. 8(b). Wells Fargo is not required to make specific allegations establishing LaSalle's knowledge that the borrowers neglected to make these repairs. As such, the Court denies LaSalle's Motion to Dismiss the breach of warranty claims for Warranties 13, 16, and 19(a).

### 2. Warranties 23 and 35

As discussed, Warranties 23 and 35 are factually insufficient to properly state a claim upon which relief can be granted and therefore the Court dismisses them without prejudice.

### 3. Order

The Court grants the Motion to Dismiss Warranties 23 and 35 without prejudice, and denies the Motion to Dismiss Warranties 13, 16, and 19(a).

### C. Counts III, V, VI – Glavin, Chowdhury, and 5GX Loans

LaSalle moves to dismiss only those allegations involving Warranty 23 (Industry Standards) and Warranty 35 (Appraisal) for these three loans.

### 1. Warranties 23 and 35

As discussed, Warranties 23 and 35 are factually insufficient to properly state a claim upon which relief can be granted and therefore the Court dismisses them without prejudice.

### 2. Order

As to Counts III, V, and VI, the Court grants the Motion to Dismiss Warranties 23 and 35 without prejudice. Because Warranties 23 and 35 are the only claims made with respect to the Chowdhury Loan, the Court dismisses without prejudice Count 5 in entirety.

### D. Count IV – Gutierrez Loan

Moreover, LaSalle seeks to dismiss under Rule 12(b)(6) three warranties covering the Gutierrez Loan: (1) Warranty 10(a) and (b) (Enforceable); (2) Warranty 23 (Industry Standards); and (3) Warranty 35 (Appraisal).

### 1. Warranty 10(a) and (b)

Specifically, Warranty 10(a) requires that the mortgages contain provisions protecting the "practical realization against the Mortgaged Property of the principal benefits of the security intended to be provided thereby, including realization by *judicial or non-judicial foreclosure . . . .*" (emphasis added). Because this loan did not contain sufficient "power-of-sale" language to allow

for a non-judicial foreclosure, it breached his warranty. (*Id.* ¶ 54.) LaSalle argues that this fails to state a claim because the allegation only relates to non-judicial foreclosure, and does not indicate that Wells Fargo is also barred from realizing "judicial foreclosure." That is, according to LaSalle, Warranty 10(a) does not require that the mortgages allow specifically for "non-judicial foreclosure," but rather some form of foreclosure. In contrast, Wells Fargo argues that the disjunctive "or" means both judicial and non-judicial foreclosure must be available to it; as such, the warranty covers blocking Wells Fargo's rights as to either judicial or non-judicial foreclosure. Unlike MLPA Section 6(a)(viii)'s unambiguous language, both LaSalle and Wells Fargo advance reasonable interpretations of Warranty 10(a). Because the meaning of this provision is ambiguous, an issue of fact remains as to the contracting parties' intent. Accordingly, the Court denies LaSalle's Motion to Dismiss Warranties 10(a) and (b).

### 2. Warranties 23 and 35

As discussed, Warranties 23 and 35 are factually insufficient to properly state a claim upon which relief can be granted and therefore the Court dismisses them without prejudice.

### 3. Order

The Court grants the Motion to Dismiss Warranties 23 and 35 without prejudice and denies the Motion to Dismiss Warranty 10(a) and (b).

### E. Count VII – Hunter Loan

LaSalle moves to dismiss Count VII in its entirety, which encompasses alleged breaches of Warranty 10(a) and (b), Warranty 18, Warranty 23, and Warranty 35.

### 1. Warranty 10(a) and (b)

As discussed, because this is an ambiguous contractual provision, and the parties' intent is an issue of fact, the Court denies LaSalle's Motion to Dismiss Warranties 10(a) and (b).

### 2. Warranty 18

In Warranty 18 (Material Improvements), LaSalle guaranteed that the material improvements taken into account to calculate the mortgaged property's appraised value were in fact within the boundaries of the mortgage property and did not encroach upon adjacent property. Wells Fargo's allegation notes that a May 12, 2006 LandAmerica Lawyers Title Policy had fencing and parking encroachments, as well as "Encroachment of two 2-story apartment buildings into 25 foot setback line affecting Lots 9 and 10." Pointing to a specific document puts LaSalle on notice, and assuming it can eventually be proven, there is a plausible basis to conclude that the existence of encroachments on the mortgaged property on the Closing Date breached Warranty 18. The Court therefore denies LaSalle's Motion to Dismiss the breach allegations covering Warranty 18.

### 3. Warranties 23 and 35

As discussed, Warranties 23 and 35 are factually insufficient to properly state a claim upon which relief can be granted and therefore the Court dismisses them without prejudice.

### 4. Order

The Court grants the Motion to Dismiss Warranties 23 and 35 without prejudice, and denies the Motion to Dismiss both Warranty 10(a) and (b) and Warranty 18.

## F. Count VIII – Windwood Loan

LaSalle asserts that all of the breach of warranty allegations in Count VIII are insufficient and moves for dismissal of the entire count. The provisions and warranties at issue include: (1) MLPA

Section 6(a)(viii) (Misrepresentations); (2) MLPA Sections 6(d) and (g) (Notice of Breach); (3) Warranty 13 (No Material Default, Breach); (4) Warranty 23 (Industry Standards); and (5) Warranty 35 (Appraisal).

### 1. MLPA Section 6(a)(viii)

As discussed, the clear terms of the MLPA and PSA deprive Wells Fargo of standing to assert a claim under MLPA Section 6(a)(viii). Accordingly, the Court grants LaSalle's Motion to Dismiss the MLPA Section 6(a)(viii) claim with prejudice.

### 2. MLPA Section 6(d) and (g)

As an initial matter, LaSalle argues that the PSA's exclusion of MLPA Section 6(a)(viii) from the group of rights transferred to Wells Fargo also carves out MLPA Sections 6(d) and (g). PSA Section 2.01(a) transferred LaSalle Commercial's rights, titles, and interests to Wells Fargo, specifically "Sections 1, 2, 3, 4, 5, 6(a) *(excluding clause (viii) of Section 6(a))*, 6(c), 6(d), 6(e), 6(f), 6(g) . . . ." (R. 39, Ex. A at 55.) The second parenthesis, however, effectively limits the exclusion to Section 6(a)(viii) only. LaSalle's argument is thus unavailing.

In any event, Wells Fargo's allegations meet the required notice and plausibility components. The Complaint describes the alleged fraudulent scheme, that is, Windwood Gardens's sale of the mortgaged property to the Windwood Seller for $1,520,000, then the immediate second sale of the mortgaged property to Windwood Borrower. (Compl. ¶ 85.) Flessner owned both the Windwood Seller and Windwood Borrower, and as a result of the "sham transaction" was able to reap the profit from the elevated $2,240,000 sales price. (*Id.* ¶ 86.) LaSalle provided the financing for these transactions. (*Id.* ¶ 85.) As pled, these allegations of LaSalle's awareness of this transaction, and

its failure to notify Wells Fargo of the warranty breaches, meets the pleading requirements. The Court denies LaSalle's Motion to Dismiss Section 6(d) and (g).

### 3.      Warranty 13

Similarly, the allegations describing LaSalle's role in the "sham transaction" sufficiently establish that the Windwood Loan was in default due to the submission of incomplete and inaccurate information during the loan application process. This is enough to overcome LaSalle's Rule 12(b)(6) challenge and as such the Court denies LaSalle's Motion to Dismiss Warranty 13.

### 4.      Warranties 23 and 35

As discussed, Warranties 23 and 35 are factually insufficient to properly state a claim upon which relief can be granted and therefore the Court dismisses them without prejudice.

### 5.      Order

The Court grants the Motion to Dismiss the MLPA Section 6(a)(viii) allegations with prejudice; grants the Motion to Dismiss Warranties 23 and 35 without prejudice; and denies the Motion to Dismiss MLPA Section 6(d) and (g) and Warranty 13.

## II.      More Definite Statement Under Rule 12(e)

In the alternative, LaSalle claims that it cannot admit or deny the allegations in the Complaint because they are too vague. Accordingly, LaSalle asserts under Rule 12(e) that Wells Fargo should provide a more definite statement of its claims. The Court has already ruled that, as pled in the Complaint, certain claims fail to state a claim, while others adequately put LaSalle on notice and state a plausible basis for relief. Given these rulings, an order for Wells Fargo to make a more definite statement is unnecessary and therefore denied.

## CONCLUSION AND ORDER

For these reasons, the Court grants in part and denies in part LaSalle's Motion to Dismiss Wells Fargo's Complaint.  The Court also denies LaSalle's Motion for a More Definite Statement under Rule 12(e).

_____

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: June 20, 2011